IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
───────────────────────────────────────────────

MADISON VIGIL FOR LIFE, INC.,
GWEN FINNEGAN, JENNIFER
DUNNETT, MARY MARKIELEWSKI,
THERESA KLINKHAMMER, CONSTANCE
NIELSEN, STUDENTS FOR LIFE OF
MADISON, BADGER CATHOLIC, FR.
RICHARD HEILMAN, SARAH QUINONES,
and RYAN WOODHOUSE,

                Plaintiffs,           OPINION & ORDER

   v.

                                                14-cv-157-wmc

CITY OF MADISON, WISCONSIN,

                Defendant.

───────────────────────────────────────────────

On February 25, 2014, the City of Madison Common Council passed Madison General Ordinance 23.01, "Prohibition on Obstructing Entryways to Health Clinics" ("the Ordinance"), by a unanimous vote. That ordinance provides in relevant part:

> (1) <u>Restrictions.</u> It shall be unlawful for any person to do any of the following:
>
> . . . (b) Intentionally approach another person to within eight (8) feet without consent for the purpose of doing any of the following on a public way or sidewalk area within a radius of one hundred sixty (160) feet from an entrance to a health care facility:
>
>    1. Pass a leaflet or handbill to the person.
>
>    2. Display a sign to the person.
>
>    3. Engage in oral protest, education or counseling with the person.

(*See* Compl. Ex. 1 (dkt. #1-1) 2.) The following day, plaintiffs filed this lawsuit for injunctive and declaratory relief, concurrently moving for a temporary restraining order and

preliminary injunction against the enforcement of the ordinance.[1]  (*See* dkt. #2.)  They contend that the Ordinance violates their First Amendment right to free speech and that it is unconstitutionally vague.

The court concludes that plaintiffs are not entitled to a temporary restraining order with respect to the Ordinance, because they have not yet shown any likelihood of success on the merits of their case.  *See AM Gen. Corp. v. DaimlerChrysler Corp.,* 311 F.3d 796, 804 (7th Cir. 2002) ("A party with no chance of success on the merits cannot attain a preliminary injunction."); *Curtis v. Thompson*, 840 F.2d 1291, 1297 (7th Cir. 1988) ("The denial of an injunction based solely upon a plaintiff's failure to establish a negligible chance of success on the merits has been expressly sanctioned by this and other circuits.").  More specifically, the court finds:  (1) the Supreme Court's decision in *Hill v. Colorado,* 530 U.S. 703 (2000), appears to dictate an adverse outcome on the merits of plaintiffs' claims, at least as to the facial challenges plaintiffs now bring; and (2) the differences plaintiffs have identified to date between the Ordinance and a nearly identical prohibition considered in *Hill* do not sufficiently distinguish this case to allow for a different outcome.  Though the court finds certain aspects of the Ordinance troubling, it finds that *Hill* controls, and accordingly, it will deny plaintiffs' motion for a temporary restraining order and will give the City of Madison thirty days to respond to the motion for a preliminary injunction.  Plaintiffs shall then have fourteen days to reply, and the court will schedule a hearing on the preliminary injunction as needed.

---

[1] As of this writing, the Ordinance has not yet been put into effect.

OPINION

Currently before the court is plaintiffs' motion for a temporary restraining order ("TRO"). A TRO differs from a preliminary injunction in that a TRO may be issued without notice to the opposing party or its attorney if "specific facts in an affidavit or a verified complaint *clearly* show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" Fed. R. Civ. P. 65(b)(1)(A) (emphasis added). "Regardless of which type of early injunctive relief is sought, the party seeking such relief 'must show that it is reasonably likely to succeed on the merits, it is suffering irreparable harm that outweighs any harm the nonmoving party will suffer if the injunction is granted, there is no adequate remedy at law, and an injunction would not harm the public interest.'" *Winnig v. Sellen*, 731 F. Supp. 2d 855, 856 (W.D. Wis. 2010) (quoting *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006)). In First Amendment cases like this one, "the likelihood of success on the merits will often be the determinative factor" in determining whether injunctive relief is appropriate. *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012) (quoting *Joelner v. Village of Washington Park, Ill.*, 378 F.3d 613, 620 (7th Cir. 2004)). Accordingly, plaintiffs focus their analysis on that factor, as does this court.

I. *Hill v. Colorado*

"The First Amendment provides that 'Congress shall make no law . . . abridging the freedom of speech, or of the press,' and applies to the States through Section 1 of the Fourteenth Amendment." *Alvarez*, 679 F.3d at 595 n.5 (quoting U.S. Const. amend. I). In this case, as in *Hill*, plaintiffs' leafletting, sign displays and oral communications are undoubtedly activities protected by the First Amendment, and the public sidewalks and

ways to which the Ordinance applies "are 'quintessential' public forums for free speech." *Hill*, 530 U.S. at 715. Even in this type of public forum, however, the government "may impose reasonable restrictions on the time, place, or manner of protected speech" without running afoul of the First Amendment, so long as the restrictions: (1) are narrowly tailored to serve a significant governmental interest; (2) allow for ample alternative channels for the expression; and (3) are content-neutral. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

As noted above, the court finds that much of its analysis in this case is governed by *Hill v. Colorado,* a United States Supreme Court case that is directly on point. *Hill* involved a constitutional challenge to Colorado Statute § 18-9-122(3), which made it unlawful for any person to "'knowingly approach' within eight feet of another person, without that person's consent, 'for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person'" within 100 feet of the entrance to any health care facility. *Hill*, 530 U.S. at 707. Like the Ordinance here, § 18-9-122(3) did not require standing speakers to move away from a passerby, nor did it restrict the content of any messages that speakers wished to communicate. Also like the Ordinance in this case, however, the Supreme Court recognized that § 18-9-122(3) did "make it more difficult to give unwanted advice, particularly in the form of a handbill or leaflet, to persons entering or leaving medical facilities." *Id.* at 708.

The Colorado Statute in *Hill* appears identical in most material respects to the Ordinance in the present case, though plaintiffs argue to the contrary. *First*, they point out that the eight-foot "bubble" zone in *Hill* extends out to a radius of 100 feet from the entrance of health care facilities, whereas the eight-foot "bubble" zone in this case extends

4

out in a 160-foot radius. While plaintiffs appear to accurately describe the difference in radius, so far as it goes, the court is not convinced that this difference, standing on its own, is likely to dictate a different result than *Hill*. Plaintiffs are welcome to attempt to show that by extending the restriction zone an additional 60 feet, into an area 2.6 times larger, the City of Madison has outstripped the bounds of the "place where the restriction is most needed," *Hill*, 530 U.S. at 730, and has expanded into areas where it is *not* needed. On the current record, however, they have not yet done so.

*Second*, plaintiffs argue that there was evidence in *Hill* of "demonstrations in front of abortion clinics [that had] impeded access to those clinics and were often confrontational," *id.* at 709, whereas the City has proffered no such evidence here. As an initial matter, the City has not yet been given an opportunity to make such a proffer. Nor is it clear the City needs to do so to prevail, since the Supreme Court in *Hill* does not appear to rely heavily on those confrontations. Rather, the *Hill* Court focused on the "unwilling listener's interest in avoiding unwanted communication," *id.* at 716, and the "particularly vulnerable physical and emotional conditions" of people attempting to enter health care facilities, *id.* at 729. The fact that there are no confrontational demonstrations in the record does not lessen the legitimacy of those interests. Furthermore, "the government may rely upon its own 'real-world experience' in enacting regulations." *Weinberg v. City of Chicago*, 310 F.3d 1029, 1038 (7th Cir. 2002). There have undoubtedly been demonstrations, confrontational or otherwise, outside of various health care facilities across the country, a fact of which the court can appropriately take judicial notice. Thus, the lack of a specific, violent encounter in Madison on the current record does not distinguish this case from *Hill* in any meaningful sense.

*Third*, though plaintiffs are less explicit about this argument, the court notes that the definition of "health care facility" appears to vary between § 18-9-122 and the Ordinance. The Ordinance defines a health care facility as including any hospital, clinic or office used by a licensed physician and notes that "[w]here an office used by a health care facility is located in a multi-office building, the common areas of the entire building shall also be deemed a health care facility." (Compl. Ex. 1 (dkt. #1-1) 2.) In contrast, § 18-9-122(4) defines a "health care facility" as "any entity that is licensed, certified, or otherwise authorized or permitted by law to administer medical treatment in this state." The explicit application of the Ordinance to multipurpose buildings raises a concern that the court will address below, but it does not suggest a different outcome from *Hill,* at least as to plaintiffs' facial challenge. *See* discussion, *infra,* II.B.

Plaintiffs point out that the Supreme Court of the United States has recently been presented in *McCullen v. Coakley,* No. 12-1168, with an *opportunity* to overrule *Hill*, should it choose to do so.[2] Nevertheless, *Hill* remains binding precedent on this court. *Levine v. Heffernan*, 864 F.2d 457, 461 (7th Cir. 1988) (noting "only the Supreme Court may overrule one of its own precedents"). Absent "an essentially different factual record," *id.* at 462, or "circumstances [that] have created a near certainty that only the occasion is needed for the pronouncement by the Supreme Court of the doom of an obsolete doctrine," *id.* at 461 (brackets and internal quotation marks omitted), a district court, including this one, is

---

[2] Given that the Supreme Court is being asked to affirm or reverse a challenge to a strict buffer zone in *McCullen*, rather than a bubble zone, it is not a given that *Hill* will be addressed, much less narrowed or overruled. Of course, should the Supreme Court's decision in *McCullen* change the relevant legal analysis, the court would entertain a motion to reconsider the denial of plaintiffs' TRO motion.

6

not free to theorize as to what the Supreme Court *might* do when confronted with its own previous decision. *Id*.

## II. Application of *Hill*

### A. Content Neutrality

With this in mind, the court first considers whether the Ordinance is content-neutral. *See Ward*, 491 U.S. at 791. The *Hill* Court answered this question with regard to § 18-9-122(3) in the affirmative. "The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Hill*, 530 U.S. at 719 (quoting *Ward*, 491 U.S. at 791). It held that the Colorado statute passed that test for three independent reasons:

> First, it is not a "regulation of speech." Rather, it is a regulation of the places where some speech may occur. Second, it was not adopted "because of disagreement with the message it conveys." This conclusion is supported not just by the Colorado courts' interpretation of legislative history, but more importantly by the State Supreme Court's unequivocal holding that the statute's "restrictions apply equally to all demonstrators, regardless of viewpoint, and the statutory language makes no reference to the content of the speech." Third, the State's interests in protecting access and privacy, and providing the police with clear guidelines, are unrelated to the content of demonstrators' speech.

*Id.* at 719-20. At least two of these reasons indisputably apply with equal force in this case: like the Colorado statute, the Ordinance is a "regulation of the places where some speech may occur," rather than a straightforward regulation of the speech itself. Likewise, the City's interests in protecting access and privacy of health care facility patients are unrelated to the content of demonstrators' speech.

Plaintiffs nevertheless contend that the Ordinance in this case is content-based, arguing that it represents "viewpoint discrimination," and that the City's motivation in passing the Ordinance was disagreement with plaintiffs' message. As support, they cite to an article written by the ordinance's primary sponsor, Lisa Subeck. The problem with their argument is that the Supreme Court in *Hill* explicitly *rejected* the theory that "a statute is 'viewpoint based' simply because its enactment was motivated by the conduct of the partisans on one side of a debate."[3] *Id.* at 724. It also considered -- and rejected -- the view that the statute was content-based in effect "because of its application 'to the specific locations where [that] discourse occurs." *Id.*; *see also Hoye v. City of Oakland*, 653 F.3d 835, 846 (9th Cir. 2011) ("[I]n regulating speech immediately outside reproductive health facilities, disproportionate effect is not of decisive significance to the content-neutral inquiry.") (citing *Hill*, 530 U.S. at 724-25). Rather, the Court found that the relevant point under the First Amendment was that the statute "applies to all 'protest,' to all 'counseling,' and to all demonstrators whether or not the demonstration concerns abortion, and whether they oppose or support the woman who has made an abortion decision." *Hill*, 530 U.S. at 725.

In each of those respects, the Ordinance in this case is identical to the Colorado statute upheld in *Hill*. Facially, it applies to all leaflets, signs, oral protest, education and counseling, without distinguishing as to the content of the speech. (*See* Compl. Ex. 1 (dkt. #1-1) 2.) Therefore, the Ordinance on its face reaches "the level of neutrality that the Constitution demands." *Hill*, 530 U.S. at 725.

---

[3] The court notes that *Hill* found the statute at issue content-neutral "even though the legislative history makes it clear that its enactment was primarily motivated by activities in the vicinity of abortion clinics." *Hill*, 530 U.S. at 715.

8

Of course, it is certainly possible, despite the facial neutrality of the Ordinance, that it will be selectively *applied* to penalize only speech of a particular viewpoint, as plaintiffs contend. Indeed, the Ninth Circuit confronted just such a case in *Hoye v. City of Oakland.* In *Hoye,* the court found that because the Oakland ordinance in question was modeled on the Colorado statute in *Hill*, it was necessarily "a facially valid restriction on the time, place, and manner of speech." *Hoye*, 653 F.3d at 843. The court went on to hold, however, that even though the ordinance was facially valid, the city had interpreted and enforced the ordinance in an unconstitutional manner. Specifically, the City of Oakland took the position that "speech that 'facilitates access' to the clinic [did] not trigger the Ordinance's consent requirement, while speech that [did] not facilitate access [did] trigger it." *Id.* at 850-51. Thus, the City's policy with regard to the ordinance was not content-neutral *as applied*, even though the ordinance itself was content-neutral under *Hill*.

Plaintiffs in this case are welcome to make such an argument, should defendant enforce the Ordinance in a selective manner that undermines its facial neutrality. As of yet, however, there is no evidence in the record that allows the court to conclude they are likely to succeed on the merits of such an argument. Indeed, the Ordinance has not yet been enforced *anywhere* to date. Absent something more, the court cannot conclude that plaintiffs are likely to succeed on distinguishing *Hill* on these grounds.

### B. Narrow Tailoring and Alternative Channels of Communication

The *Hill* Court collapsed the other two *Ward* factors into a single inquiry, finding that the Colorado statute: (1) left open ample alternative channels of communication; and (2) largely *because* of those alternative channels, it was sufficiently "narrowly tailored" under

9

*Ward*. The Court first emphasized that "when a content-neutral regulation does not entirely foreclose any means of communication, it may satisfy the tailoring requirement even though it is not the least restrictive or least intrusive means of serving the statutory goal." *Hill*, 530 U.S. at 726. With that principle in mind, the Court concluded that the eight-foot "bubble" zone around a pedestrian was constitutional, noting that "[s]igns, pictures, and voice itself can cross an 8-foot gap with ease." *Id.* at 729. Even handing out leaflets, though further complicated by the statute, was still *possible*, since "demonstrators with leaflets might easily stand on the sidewalk at entrances (without blocking the entrance) and, without physically approaching those who are entering the clinic, peacefully hand them leaflets as they pass by." *Id.* at 729-30.

Again, *Hill* compels this court to find that under current law, plaintiffs are unlikely to succeed in demonstrating that the Ordinance as a whole is not narrowly tailored. Their arguments that the eight-foot "bubble" zone makes it impossible to engage in conversation, offer a leaflet or display a sign were explicitly rejected in *Hill*, which approved a "bubble" zone of *exactly* the same size. *See* Hill, 530 U.S. at 726-28. Plaintiffs' argument that the Ordinance is also *underinclusive*, because it attaches bubbles only to physicians' offices rather than to all locations in which protests have occurred, is unpersuasive given that the Ordinance itself, as in *Hill*, is apparently intended to protect *health care patients* from protestors, not to stifle all protest everywhere. (*See* Compl. Ex. 1 (dkt. #1-1) 2.)

Plaintiffs also argue that the Ordinance is "overbroad" because it applies in a large number of locations geographically. This concern was specifically addressed and rejected by the *Hill* Court, which held "[t]he fact that the coverage of a statute is broader than the specific concern that led to its enactment is of no constitutional significance." *Id.* at 730-

31.  Rather, "[w]hat is important is that all persons entering or leaving health care facilities share the interests [i.e., in privacy and access] served by the statute." *Id.* at 731. Health care patients in Madison undoubtedly share the same interests in privacy and access as do those in Colorado, and so with respect to persons entering and exiting hospitals and clinics, plaintiffs' overbreadth argument is necessarily unavailing.

Plaintiffs' strongest argument is that the Ordinance in this case explicitly applies to the common areas of multipurpose office buildings as well as to stand-alone hospitals and clinics, since that would appear to weaken the City's interests. In upholding the Colorado statute in *Hill,* the Supreme Court recognized that the statute restricted the places where speech could occur but found that the powerful interest in protecting the privacy of *health care patients* justified the restriction. *See id.* at 729 ("Persons who are attempting to enter health care facilities – for any purpose – are often in particularly vulnerable physical and emotional conditions. The State of Colorado has responded to its substantial and legitimate interest in protecting these persons from unwanted encounters, confrontations, and even assaults by enacting an exceedingly modest restriction on the speakers' ability to approach."). This justification seems to apply with far less strength to persons entering an office building in which a physician merely happens to reside, as there is no reason to conclude that all such persons are "in particularly vulnerable physical and emotional conditions." Indeed, many of them may not be attempting to obtain health care at all.

Nevertheless, the court concludes that *Hill* forecloses the possibility of success on such a facial challenge. Though the Colorado statute was somewhat unclear as to whether it applied to multipurpose facilities -- and indeed, though the State of Colorado *rejected* that

11

application of the statue in its briefing[4] -- the *Hill* majority appears to have interpreted it to apply to multipurpose facilities as well as stand-alone entities.  Justice Stevens' majority opinion, in finding the statute reasonable and narrowly tailored, specifically states that "[s]pecial problems that may arise where clinics have particularly wide entrances *or are situated within multipurpose office buildings* may be worked out as the statute is applied."  *Hill*, 530 U.S. at 730 (emphasis added).  Thus, the *Hill* Court recognized and rejected the theory that the statute's facial constitutionality turned upon its application to stand-alone facilities. Though perhaps the *enforcement* of the Ordinance outside multipurpose buildings will give rise to "[s]pecial problems" that eventually support an as-applied challenge to that portion of the Ordinance, the court cannot say, in light of *Hill*, that the Ordinance is facially unconstitutional for overbreadth.

  C. Vagueness

While this court is sympathetic to plaintiffs' other constitutional challenge to the Ordinance as void for vagueness and the grant of unbridled discretion to police, the *Hill* Court's decision dictates otherwise.  Indeed, the Court rejected both of those arguments, holding that "it [was] clear what the ordinance as a whole prohibit[ed]," *Hill*, 530 U.S. at 733 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972)), and that the degree of judgment the statute demanded of law enforcement authorities was "acceptable," *id.* Accordingly, this court is precluded from finding that plaintiffs have any likelihood of

---

[4] Specifically, the State of Colorado argued in its brief that the statute would not apply to individual doctors' offices, stating that "[t]he legislature was clearly talking about physical locations with 'entrance doors,' so that 'entity' does not refer to individual doctors."  Brief for Respondent at 11 n.9, Hill v. Colorado, 530 U.S. 703 (2000) (No. 98-1856), 1999 WL 1146869.  It also stated that the "unique and important concern with safe access to medical care applies outside all health care facilities, as distinguished from commercial businesses or government offices." *Id.* at 11.

success on the merits of these two challenges either, given that the Ordinance here tracks the Colorado statute in *Hill* nearly word for word.

Because plaintiffs have failed to establish that they are likely to succeed on the merits of their First and Fourteenth Amendment challenges to the Ordinance, they are not entitled to a temporary restraining order. They have also moved for a preliminary injunction, however, and have asked the court to set a briefing schedule on that motion. The court will give defendant thirty (30) days to respond to plaintiff's motion from the date of service of the summons and complaint. In light of this ruling today denying a TRO, the court will also give plaintiffs fourteen days to reply. Plaintiffs are also responsible for providing defendants with immediate and actual notice of this response deadline.

ORDER

IT IS ORDERED that:

1. Plaintiffs' motion for a temporary restraining order (dkt. #2) is DENIED in part. The court RESERVES judgment on the request for a preliminary injunction.

2. Defendant may have until March 31, 2014, to respond to that motion.

3. Plaintiffs may have until April 14, 2014, to reply to that response.

4. An injunctive hearing will be set at a later date if needed.

Entered this 28th day of February, 2014.

BY THE COURT:

s/ William M. Conley

_____
WILLIAM M. CONLEY
District Judge