MADISON VIGIL FOR LIFE, INC.; a Wisconsin
corporation; GWEN FINNEGAN; JENNIFER
DUNNETT; MARY MARKIELEWSKI; THERESA
KLINKHAMMER; CONSTANCE NIELSEN;
STUDENTS FOR LIFE OF MADISON, an
unincorporated expressive student organization at the
University of Wisconsin-Madison; BADGER
CATHOLIC, a Wisconsin corporation and an
expressive student organization of the University of
Wisconsin-Madison; FR. RICHARD HEILMAN;
SARAH QUINONES; and RYAN WOODHOUSE;

      Plaintiffs,

v.

CITY OF MADISON, WISCONSIN;

      Defendant.

Case No. 14-CV-157-WMC

## PLAINTIFFS' SURREPLY TO DEFENDANT'S MOTION TO DISMISS AND MOTION FOR STAY

The original Buffer Zone ordinance is still the law of the City of Madison. Enactment of that ordinance made Plaintiffs' claims ripe, and for reasons stated in their response brief, the City has not mooted those claims. Rather, as indicated by the Council's passage of substantially the same ordinance under the same ordinance number, those claims persist against MGO 23.01, as does the City's intention to suppress Plaintiffs' speech.

The City contends that Plaintiffs' claims are moot by amendment of the ordinance. But the City's proffers show the ordinance has not been amended. It admits that City Council actions

1

are not valid until the Mayor approves them, and it provides no proof that such approval has occurred. Instead it tacitly admits such approval has not yet occurred but may (or may not) occur within 10 days. By information and belief of undersigned counsel, the City Council's minutes from its March 18 meeting have not even been presented to the Mayor for approval. Therefore the original ordinance challenged in the existing complaint has not been amended yet, and is still the law of the City.

Plaintiffs are prepared to file an amended complaint one or two business days of receiving notice that the amended ordinance has actually been enacted. The amendment to the complaint will be minor, however, because despite the City's assertions the anticipated new ordinance only minimally retracts the impact of the original ordinance. On the contrary, the new ordinance actually expands the City's speech restriction in several ways. For example, the definition of health care facility was not made more restrictive overall as the Deputy City Attorney attests. Instead, although it added a requirement that medical treatment be provided at such a facility, the definition was also expanded so that it now includes facilities that merely have nurses providing care and not necessarily doctors.

Moreover, the anti-speech bubbles around multi-office buildings have been exacerbated, such as in the city-block sized building described in the complaint and preliminary injunction motion where the UW Student Government resides along with University Health Services. Under the original ordinance, the bubbles only existed around entrances to common areas of the building. The amended ordinance eliminates the common area requirement and enacts bubbles around *every* building entrance. Thus, because the health facility has no "separate" external entrance to that building, the new ordinance attaches bubbles even to the doorways of restaurants

and stores in the building that are not common area entrances. And in addition, new 30-foot bubbles exist around that building's driveways where they did not need to exist before.

Likewise, while the radius of bubbles was reduced to 100 feet from entrances, it now includes freestanding 30-foot bubbles around driveway entrances. For many buildings and complexes containing a medical facility this creates bubbles far more than 160 feet away from entrances, which was the limit imposed in the previous ordinance. This also worsens anti-speech bubbles around polling places where it happens that the driveways are already farther than 100 or 160 feet away from the building entrance. Meanwhile, the City did not even attempt in its amendment process to introduce actual evidence or even additional testimony for the need for any of these bubbles, much less for expanding bubbles around facilities like the student government building. The legislative record contains no evidence whatsoever for bubbles on buildings that do not do abortions, and no evidence of any actual problem outside the Planned Parenthood. Plaintiffs' as applied need for injunctive relief around such buildings is therefore even more urgent than ever.

Upon receiving information that the ordinance amendment has actually been enacted by virtue of the Mayor's approval (information that the City has no regular custom of promulgating), Plaintiffs will promptly file an amended complaint and amended request for injunctive relief. In the meantime, Plaintiffs submit that the City has taken actions that do the opposite of mooting Plaintiffs' claims, and they ask the Court not to grant Defendants' motions.

Respectfully submitted this 21st day of March, 2014,

  *s/Matthew S. Bowman*
MATTHEW S. BOWMAN                           DAVID A. CORTMAN
DC Bar No. 993261                           GA Bar No. 188810
ALLIANCE DEFENDING FREEDOM                  ALLIANCE DEFENDING FREEDOM

3

801 G Street, NW, Suite 509  
Washington, D.C. 20001  
(202) 888-7620—direct  
(202) 347-3622—facsimile  
mbowman@alliancedefendingfreedom.org  

1000 Hurricane Shoals Road N.E., Ste. D-1100  
Lawrenceville, GA 30043  
(770) 339-0774  
(770) 339-7644—facsimile  
dcortman@alliancedefendingfreedom.org  

KEVIN H. THERIOT  
KS Bar No. 21565  
ALLIANCE DEFENDING FREEDOM  
15192 Rosewood  
Leawood KS 66224  
(913) 685-8000  
(913) 685-8001—facsimile  
ktheriot@alliancedefendingfreedom.org  

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2014, I promptly caused a copy of the foregoing response to be delivered to counsel for Defendants by means of the Court's ECF filing and notice system.

Respectfully submitted,

*s/Matthew S. Bowman*  
MATTHEW S. BOWMAN  
ALLIANCE DEFENDING FREEDOM  
*Attorney for Plaintiffs*